Application of William E. BRANDAU.

Patent Appeal No. 6212.

United States Court of Customs
and Patent Appeals.
June 20, 1956.

---

Herbert L. Davis, Teterboro, N. J. (Emory C. Naylor, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., for Commissioner of Patents.

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON, retired, Judges

COLE, Judge.

This appeal is from the decision of the Board of Appeals of the United States Patent Office, affirming the Primary Examiner's rejection of claims 19 and 22 of appellant's application serial No. 90,453 for patent on a "Turbojet Engine Control System," on the ground of lack of invention over prior patents.

The appealed claims are as follows:

"19. In a system for controlling the operation of a turbojet engine having an air intake, a combustion chamber, a compressor for supplying air from said intake to said chamber, and means driven by combustion gases from said chamber for driving said compressor; the combination comprising compressor speed regulating means, combustion gas temperature responsive means for overriding said speed regulating means upon the temperature of said combustion gases exceeding a selected maximum value, and means to select the maximum temperature value including first air intake temperature responsive means and second compressor speed responsive means, said first and second means cooperating to select said maximum temperature value.

"22. For use in controlling the operation of a turbojet engine having an air intake, a combustion chamber, a compressor for supplying air from said intake to said combustion chamber, and means driven by the exhaust gases from said chamber for driving said compressor; the combination comprising engine speed regulating means, means for overriding said speed regulating means upon the temperature of said engine exceeding a maximum value, and means to determine said maximum value including first air intake condition responsive means and second engine operating condition responsive means, said first and second means cooperating in determining said maximum temperature value.

The references relied on are:

Ifield et al. 2,403,371, July 2, 1946;
Bradbury 2,404,428, July 23, 1946;
Strub 2,499,232, Feb. 28, 1950.

Appellant's application relates to a turbojet engine of the type which is driven by combustion products. As shown in the application, the combustion takes place in a closed chamber to which liquid fuel is fed under pressure and air under pressure is supplied by a rotary compressor. The combustion gases issue from the chamber through a nozzle and rotate the turbine, which, in turn drives the air compressor.

It is explained in the application that in order to secure proper operation of the engine and prevent stalling of the compressor, it is necessary to maintain a definite relationship between the temperature of the combustion gases on one hand and the air intake temperature and compressor speed on the other. In order to effect that result, the applicant provides an electrical control system in which the normal manual control of the engine is subject to regulation by a thermostat responsive to the temperature of the combustion gases, when that temperature reaches a selected maximum, and in which the value of the maximum temperature selected is determined by the joint action of an element responsive to compressor speed and a thermostat responsive to air intake temperature. By proper adjustment of those controls in accordance with the characteristics of the particular engine involved, compressor stall is prevented and safe and efficient operation is secured.

No question has been raised by the Patent Office tribunals as to the desirability of the objectives set forth in the application, or the operativeness of the disclosed means in attaining them. In view of that fact, and since the appealed claims do not involve the specific structure of the control system, a more detailed discussion of the applicant's system is unnecessary.

The patent to Bradbury discloses a turbojet engine which is of the same general type as appellant's and is provided, in addition to manual control means, with a control element responsive to compressor speed and a thermostat responsive to the temperature of the combustion gases. These two devices act independently on a by-pass valve to cause it to be opened, with a consequent reduction in the fuel supply, whenever the engine speed or the gas temperature reaches a predetermined maximum. There is, however, no joint regulation. The fuel supply will be determined by whichever control element calls for the greater reduction, regardless of the position of the other control element.

The Ifield patent discloses a control system generally similar to that of Bradbury, and involving the independent control of the fuel supply by a means responsive to compressor speed and a thermostat responsive to temperature "in any part of the system supplied by the pump." This patent is merely cumulative to Bradbury and does not require further separate discussion.

The patent to Strub shows a turbojet engine control system in which there is provided a fuel supply valve having a reciprocable stem which is connected through a spring with a device responsive to the temperature of the combustion gases. At a point intermediate the ends of the valve stem there is provided a transversely extending pin which is slidable in the slot of a cam plate. The cam plate is moved in a direction at right angles to the valve stem and has a wide inclined slot which receives the pin. The pin, and consequently the valve stem, thus may have a limited movement before being restrained by the engagement of the pin with a wall of the slot. The cam plate is moved by the joint action of devices which are responsive to the pressure and temperature at the inlet of the combustion chamber and when it is so moved, the slot walls engage the pin and move the valve stem.

As the result of the arrangement just described, the dominant control in the Strub system is effected by the devices responsive to the temperature and pressure at the combustion chamber inlet. Those devices may open or close the fuel valve, regardless of the combustion gas temperature, since they act on the valve through direct mechanical connections and not by varying the settling of the means which responds to combustion gas temperature.

Appealed claim 19 calls for a turbojet engine control system comprising a means for overriding the normal speed regulating means when the combustion gas temperature reaches a selected maximum value, and means including an air intake temperature responsive means and a compressor speed responsive means

which cooperate to select that value. That claim was rejected on Bradbury in view of Strub.

In support of the rejection the board pointed out that Bradbury discloses means for regulating a turbojet engine in response to compressor speed and combustion gas temperature, while Strub shows means for controlling such an engine by several devices, one of which is responsive to air intake temperature. In view of that disclosure, the board was of the opinion that there would be no invention in adding an air intake temperature responsive means to Bradbury's control system.

The board's position might be sound if the claim called for nothing more than the broad idea of associating three control means, each of which is old individually, in a single system. That, however, is not the case. Claim 19 does not merely recite the three control means, but requires that they be combined in a specific way, namely, so that the compressor speed and air intake temperature responsive means shall select the temperature at which the combustion gas temperature responsive means shall become effective. That is a combination which, as pointed out above, produces a unitary result in that it prevents compressor stalling.

The references fail to show or suggest the association of control devices in the specific way set forth in appealed claim 19. In fact, they do not even disclose a system in which any two control devices cooperate to select the maximum value at which a third control device will become effective.

Appealed claim 22 was rejected on the same combination of references as claim 19, and also on Ifield in view of Strub. Since Ifield, like Bradbury, merely shows the regulation of engine speed by each of two independent control devices, the foregoing discussion of the proposed combination of Bradbury and Strub is equally applicable to the combining of Ifield and Strub.

Claim 22 is somewhat broader than claim 19 in its definition of the two control means which select the maximum temperature value at which the third control device becomes effective but since, as above noted, the references do not suggest the desirability of associating any three control devices in the manner claimed, nor disclose how such association could be made if it were considered desirable, we are of the opinion that claim 22, as well as claim 19, defines patentably over the references.

The appellant argues at some length that the patent to Strub, regardless of what it discloses, cannot properly be combined with Bradbury or Ifield in rejecting his claims, for the reason that the Strub patent was granted after appellant's application was filed and its disclosure, therefore, was not accessible to the public as of appellant's filing date, although Strub's application had been on file for several years at that time. It is not necessary to pass upon that question here since, as above indicated, the proposed combination of references does not disclose or suggest the invention covered by the appealed claims.

The decision of the Board of Appeals is reversed.

Reversed.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, J., because of illness, did not participate in the hearing or decision of this case.